# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERI BROWN,<br><br>        Plaintiff,<br><br>    v.<br><br>JONATHAN NEIL AND ASSOCIATES, INC.,<br><br>        Defendant. | Case No. 1:17-cv-00675-SAB<br><br>ORDER DENYING JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND VACATING JUNE 13, 2018 HEARING<br><br>(ECF No. 32)<br><br>FOURTEEN DAY DEADLINE |

Plaintiff Teri Brown filed this action on behalf of herself and others similarly situated against Defendant Jonathan Neil and Associates, Inc. alleging violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Currently before the Court is the parties' joint motion for preliminary approval of the class action settlement. (ECF No. 32.) The parties have consented to the magistrate judge for all purposes. (ECF Nos. 34, 35, 36.)

The Court, having reviewed the record, finds this matter suitable for decision without oral argument. *See* Local Rule 230(g). Accordingly, the previously scheduled hearing set on June 13, 2018, will be vacated and the parties will not be required to appear at that time.

/ / /

/ / /

/ / /

1

# I.

# FACTUAL BACKGROUND

At some time, Plaintiff incurred an obligation to Mercury Insurance Company. (Compl. ¶ 23.) Mercury Insurance Company contracted with Defendant to collect the debt. (Compl. ¶ 27.) Around March 14, 2017, Defendant sent Plaintiff a collection letter regarding the debt owed to Mercury Casualty Insurance Company. (Compl. ¶ 29.) Plaintiff received and read the letter which stated "RE: MERCURY CASUALTY INSURANCE". (Compl. ¶¶ 31, 32.)

On May 16, 2017, Plaintiff filed this action, on behalf of herself and others similarly situated, alleging that the letter failed to accurately identify the creditor in violation of the FDCPA; and California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788 et seq. (ECF No. 1.) Defendant filed an answer on June 22, 2017. (ECF No. 7.) The scheduling order issued on July 28, 2018, setting the deadline to file a motion for class certification. (ECF No. 10.)

On January 12, 2018, Plaintiff filed a motion for class certification. (ECF No. 19.) Defendant filed an opposition on January 31, 2018. (ECF No. 20.) Plaintiff filed a reply on February 9, 2018. (ECF No. 24.) A hearing on the motion was held on February 14, 2018, and the parties were to provide supplemental briefing to address the Court's authority to expand the class beyond that requested by the plaintiff and additional authority on limiting the class from that proposed in the complaint filed in the action. (ECF No. 26.) On March 22, 2018, a notice of settlement was filed and the motion for preliminary approval of the class action settlement was to be filed on or before May 7, 2018. (ECF No. 31.) On May 7, 2018, the parties filed a motion for preliminary approval of the class action settlement. (ECF No. 32.)

On May 10, 2018, Defendant consented to the jurisdiction of the United States magistrate judge. (ECF No. 35.) On May 11, 2018, Plaintiff consented to the jurisdiction of the United States magistrate judge. (ECF Nos. 35, 36.) On May 14, 2018, this matter was reassigned to the undersigned. (ECF No. 37.)

/ / /

/ / /

# II.

# LEGAL STANDARD

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. <u>Class Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, especially where settlement occurs prior to class certification, courts must peruse the proposed settlement to ensure the propriety of class certification and the fairness of the settlement. <u>Stanton v Boeing</u>, 327 F.3d 938, 952 (9th Cir. 2003).

To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have been met. <u>Wang v. Chinese Daily News, Inc.</u>, 737 F.3d 538, 542 (9th Cir. 2013). This requires the court to "conduct a 'rigorous analysis' to determine whether the party seeking class certification has met the prerequisites of Rule 23." <u>Wright v. Linkus Enterprises, Inc.</u>, 259 F.R.D. 468, 471 (E.D. Cal. 2009).

Federal Rule of Civil Procedure 23(e)(2) requires that any settlement in a class action be approved by the court which must find that the settlement is fair, reasonable, and adequate. The role of the district court in evaluating the fairness of the settlement is not to assess the individual components, but to assess the settlement as a whole. <u>Lane v. Facebook, Inc.</u>, 696 F.3d 811, 818-19 (9th Cir. 2012) <u>reh'g</u> <u>denied</u> 709 F.3d 791 (9th Cir. 2013).

### A. Terms of Proposed Settlement

The parties have agreed to settle the claims of a class defined as

> All consumers with an address in the State of California who were sent an initial collection letter and/or notices from Defendant, during the period of May 16, 2016 to present, attempting to collect a consumer debt owed which stated "Re: Mercury Casualty Insurance."

(Settlement Agreement and Release of All Claims ("Settlement Agreement") ¶ 5, ECF No. 32-2.)

The Class Members who do not opt-out will release and discharge all claims asserted in or that could have been asserted in this action. (<u>Id.</u> at ¶ 6(A). This includes all known or unknown claims under federal or California law from May 16, 2016 until the date the settlement is preliminarily approved against Defendant and "all of its past and present parent companies,

controlling persons, subsidiaries, affiliates, directors, officers, agents, attorneys, employees, owners, successors and insurers" that arise out of the failure to clearly and concisely identify the current creditor in violation of the FDCPA and RFDCPA. (Id. at ¶ 6(A).) Plaintiff agrees to release all known and unknown claims against Defendant. (Id. at ¶ 6(B)(C).)

Defendant will pay $10,000.00 in statutory damages to the Settlement Class. (Id. at ¶ 7.) The Settlement Class is comprised of 40,133 individuals. (Id. at ¶ 8.) The class members will receive a pro rata share of the settlement fund, capped at $50.00 per claimant. (Id. at ¶ 9(a).) All unclaimed funds will first be used to pay the class action administrative costs and if any fund remain they shall be donated as a *cy pres* award to a charitable organization subject to the Court's approval. (Id. at ¶ 9(c).) Plaintiff shall receive statutory damages of $1,000.00 and a service award of $1,500.00 for a total of $2,500.00. (Id. at ¶ 9(d).)

Class counsel will receive attorney fees of $33,500.00 to cover all fees and costs associated with the litigation. (Id. at ¶ 10.) The Class Administrator will mail notice providing address forwarding within twenty days of preliminary approval of the settlement. (Id. at ¶ 11, 12.) If a notice is returned with a forwarding address provided the Class Administrator will forward the notice to the address provided, but there will be no skip trace to determine addresses of those notices returned as undeliverable. (Id. at ¶¶ 11, 17.)

Class members have forty-five days after the notice is mailed to opt-in, exclude themselves from, or object to the settlement. (Id. at ¶ 12.) Class members may be excluded from the settlement agreement by opting out within the set time-period. (Id.)

Defendant shall pay costs and expenses through its insurance carrier to the Class Administrator, including but not limited to, the costs of printing and mailing notice and issuing and mailing settlement checks to the class members. (Id. at ¶ 16.)

**B. The Settlement Agreement is Not Fair, Reasonable, and Adequate**

Federal Rule of Civil Procedure 23(e)(2) which requires that any settlement in a class action be approved by the court which must find that the settlement is fair, reasonable, and adequate. Review of the proposed settlement of the parties proceeds in two phases. True v. American Honda Motor Co., 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010). At the preliminary

approval stage, the court determines whether the proposed agreement is within the range of possible approval and whether or not notice should be sent to class members. True, 749 F.Supp.2d at 1063. At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. Id.

When the settlement takes place before formal class certification, as it has in this instance, settlement approval requires a "higher standard of fairness." Lane, 696 F.3d at 819 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)). This more exacting review of class settlements reached before formal class certification is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." Lane, 696 F.3d at 819.

"To determine whether a settlement falls within the range of possible approval, a court must focus on substantive fairness and adequacy, and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." Lusby v. Gamestop, Inc., 297 F.R.D. 400, 415 (N.D. Cal. 2013) (quoting In re Tableware Antitrust Litig., 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007)). "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." In re Tableware Antitrust Litigation, 484 F.Supp.2d at 1079 (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

Upon consideration of the settlement agreement as a whole, the Court finds that it is not fair, adequate, and reasonable for the reasons discussed below.

1. Opt-In/Opt-Out Requirement

Plaintiff seeks class certification under Rule 23(b)(3) and Rule 23 provides that a class member may opt-out and not be bound by the adjudication or settlement of the class claims. Fed. R. Civ. P. 23(c)(2)(B), (3)(B); 146 A.L.R. Fed. 563 (Originally published in 1998). The unnamed class members have due process rights and the "right to participate, or to opt-out, is an

individual one and should not be made by the class representative or the class counsel." Hanlon, 150 F.3d at 1024. The settlement agreement here provides that the class members shall have forty-five days after notice is mailed "to opt in, exclude themselves from, or object to, the proposed settlement." (Settlement Agreement ¶ 12.) Therefore, to be excluded from the settlement, a class member may opt-out and not be bound by the terms of the agreement. However, the parties also require a class member to submit a claim form to obtain a share of the settlement fund. (Claim Form, ECF No. 32-4.) Based on the agreement as written, a class member who does not opt out or submit a claim remains a member of the class and is bound by the agreement. The Court finds that this precludes finding that the settlement agreement is fair, adequate, and reasonable.

The parties have determined that the Settlement Class is comprised of 40,133 individuals. (Settlement Agreement at ¶ 8.) Since Defendant sent letters to each of these class members, their identity is known. The agreement extinguishes the rights of all individuals who do not opt out regardless of whether they received compensation or filed a claim form for any alleged violation. Since the identity of all class members is known, it is not clear why a class member should be required to submit a claim form to participate in the settlement. Further, given that each class member could potentially only receive $0.25, the cost of postage is more than the class member would receive in the settlement. This could result in the class member actually losing money by submitting a claim form. The potential exists that no unnamed class member will actually receive any compensation from the proposed settlement.

The Court finds it is not fair, adequate and reasonable to require claim forms to be submitted to receive a share of the settlement fund where the identity of the class members is known and no further information is necessary to determine the amount the class member is entitled to receive under the terms of the settlement agreement.

2.   Notice

The Court also has concerns regarding the class notice. Rule 23 requires that notice for any class certified under Rule 23(b)(3) must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through

reasonable effort." Fed. R. Civ. P. 23(b)(2)(B). Adequate notice is critical to court approval of a class action settlement. Hanlon, 150 F.3d at 1025. This does not require actual notice and notice by mail is sufficient to satisfy due process if it is reasonably calculated to apprise the interested parties of the pendency of the action and affords them an opportunity to object. Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 452 (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

Here, the claims administrator is to mail notices and re-mail notices that are returned with a forwarding address, but no skip trace is to be done to determine the address of any class member. The conduct at issue in this action encompasses letters mailed from May 16, 2016 to present. (Settlement Agreement ¶ 5.) It is reasonable to assume that some of these 40,000 class members would have moved within the last two years and the time for the Postal Service to forward or notify of a new address would have expired. Therefore, merely mailing a notice without any efforts to obtain an updated address is insufficient to provide notice. The Court finds that the settlement must provide for some manner of reasonable effort to obtain the current address of the class members, whether that be prior to mailing or only for those letters returned as undeliverable.

As to the notice itself, the Court finds that it is misleading. The notice states that class members will receive a *pro rata* share of the settlement fund capped at $50.00. (Settlement Notice ¶ 6, ECF No. 32-3.) Informing the class members that they can receive up to $50.00 is illusory. Here, the class is comprised of 40,133 individuals. If all or a substantial number of individuals were to participate in the settlement, the pro rata share would be approximately $0.25. In their motion, the parties state that if an opt-in procedure is used, based on the typical opt-in rate, each class member would be expected to receive at least $5.00. (Joint Motion for Class Certification 4, ECF No. 4.) In order for class members to receive $5.00 only 2,000 of the over 40,000 class members would be able to submit a claim form. The language that the class member could receive $50.00 is likely to mislead the class member to believe that her compensation in this action would be substantially more than will actually be received. A class member would be more likely to object or opt-out were she aware that she was only going to

7

receive $0.25 to $5.00, rather than $50.00, for a statutory violation that would entitle her to $1,000.00 in damages.

    3. <u>Unclaimed Funds</u>

The agreement provides that Defendant's insurance carrier is to pay for the costs of administrating the settlement. (Settlement Agreement ¶ 16.) However, it also provides that any unclaimed settlement funds will be used first to pay the class action administration costs, and then donated to a *cy pres* beneficiary. (<u>Id.</u> at ¶ 9(c).) The Court finds that the insurance carrier is not entitled to receive an offset out of the unclaimed settlement funds. In the event that any funds remain unclaimed, such funds should be donated to the *cy pres* beneficiary.

The parties are advised that *cy pres* distribution allows the distribution of unclaimed funds to indirectly benefit the entire class. <u>Six Mexican Workers v. Arizona Citrus Growers</u>, 904 F.2d 1301, 1305 (9th Cir. 1990). This requires the *cy pres* award to qualify as "the next best distribution" to giving the funds directly to the class members. <u>Dennis v. Kellogg Co.</u>, 697 F.3d 858, 865 (9th Cir. 2012). "Not just any worthy charity will qualify as an appropriate *cy pres* beneficiary[,]" there must be "a driving nexus between the plaintiff class and the *cy pres* beneficiary." <u>Dennis</u>, 697 F.3d at 865 (quoting <u>Nachshin v. AOL, LLC</u>, 663 F.3d 1034, (9th Cir. 2011)). The choice of distribution options should be guided by the objective of the underlying statute and the interests of the class members. <u>Six Mexican Workers</u>, 904 F.2d at 1307.

    4. <u>Released Claims</u>

The settlement agreement provides that the settlement class members

> who do not opt-out, release and forever discharge Released Parties from any and all claims asserted in or that could have been asserted in the Lawsuit, whether known or unknown, under federal law and/or California law arising out of Defendant's alleged failure to do the following from May 16, 2016 until the date this settlement is preliminarily approved by the Court: failing to clearly and concisely identify the current creditor in violation of 15 U.S.C. §1692g(a)(2) et seq. (Fair Debt Collection Practices Act) and Cal. Civ. Code § 1788.17 et seq. (Rosenthal Fair Debt Collection Practices Act).

(Settlement Agreement ¶ 6(A).)

In addition to the issue that the agreement requires the class members to submit a claim form, the Court also has concerns regarding the extent of the claims released. The scope of the

release here appears to be designed to cast as wide a net as possible in releasing the claims of the unnamed class members rather than to only those claims brought in the current complaint.

5. Compensation

Finally, and most concerning to the Court, is the monetary settlement amount and payments contemplated. The class representative has an incentive to advance his own interests over that of the class and class counsel owes the ultimate fiduciary responsibility to the class as a whole and is not bound by the views of the named plaintiff regarding settlement. Stanton, 327 F.3d at 959-60. Therefore, in assessing the fairness of the settlement, the court is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 150 F.3d at 1027 (quoting Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982)).

In this instance, the parties have negotiated a settlement fund of $10,000.00 for over 40,000 class members. While the Court understands that the statute itself limits the damages to one percent of the defendant's net worth and the amount is the statutory limit, the likely result is that the individual class members will receive approximately $0.25.[1]

Plaintiff is seeking $1,000.00 which is the maximum statutory damages and $1,500.00 in an incentive payment. Therefore, while the unnamed class members are expected to receive somewhere around .025 percent of the damages to which they are entitled, Plaintiff is receiving the maximum statutory damage award and an additional $1,500.00. Plaintiff will be receiving approximately 10,000 times more than any unnamed class member.

Furthermore, in balancing the amount offered in settlement against the value of the

---

[1] The Court notes that Plaintiff's motion for class certification sought to certify a class of individuals that reside in Kern County due to the limited recovery that would be received if the class included all class members in the State of California. (ECF No. 19.) Oral argument on the motion was held on February 14, 2018, and the parties were to file supplemental briefing. (ECF No. 26.) The Court expressed concern on the appropriateness of limiting the class to a single county where the complaint was brought for a class that comprised the State of California and whether it had the authority to certify a class more expansive than that requested by the plaintiff. The supplemental briefing was to address the Court's authority to expand the class beyond that requested by the plaintiff and additional authority on limiting the class from that proposed in the complaint filed in the action. (ECF No. 27.) On the day that the supplemental briefing was due, the parties filed their notice of settlement so the motion for class certification was not addressed by the Court. The Court still has these concerns if the parties attempt to limit the class membership in order to increase payout to the class members.

claims, if Plaintiff's claim is entitled to the maximum statutory damage amount, then so are the unnamed class members as their claims are identical to Plaintiff's claim. Therefore, the unnamed class member claims are worth $401,330.00. Hanlon, 150 F.3d at 1026; Lusby, 297 F.R.D. at 415. Plaintiff is receiving full compensation for his statutory damage claim, but is settling the unnamed class member claims for $10,000, or .025 percent of the value of their claims. This clearly raises the question as to whether Plaintiff's interests have diverged from that of the class itself.

Similarly, class counsel is seeking $33,500.00 for attorney fees, costs, and expenses. These issues are currently being addressed in Congress by proposed legislation to change the class action rule.

Legal briefing on the Fairness in Class Action Litigation and Furthering Asbestos Claim Transparency Act of 2017 ("FICALA") (H.R. 985), which passed the House in March 2017, recognized the concern that "the class representative may sell out the interests of the absent class members in favor of his or her own self-interest or otherwise fail to fairly represent the class." Kevin M. Lewis, Congressional Research Service, R45159 Class Action Lawsuits: A Legal Overview for the 115th Congress, 1, 6 (2018) (internal punctuation omitted), available at https://fas.org/sgp/crs/misc/R45159.pdf (last viewed June 1, 2018). The report also stated,

> Just as class members usually have no direct control over the class representative, class members also typically "have no control over class counsel." Because each class member's interest in the case is typically small, class members may have relatively little financial interest in the outcome of the litigation for the class as a whole. For instance, if class counsel obtains a favorable result for the class in the $30 million fraud example described above, each class member may win a maximum of only $30, but class counsel could potentially receive a sizable award of attorney's fees. For this reason, courts and commentators have expressed concern that plaintiffs' attorneys may not always act in the best interests of class members, particularly when negotiating a settlement with the defendant. As the U.S. Court of Appeals for the Seventh Circuit ("Seventh Circuit") explained,
>
>> Class counsel rarely have clients to whom they are responsive. The named plaintiffs in a class action, though supposed to be the representatives of the class, are typically chosen by class counsel; the other class members are not parties and have no control over class counsel. The result is an acute conflict of interest between class counsel, whose pecuniary interest is in their fees, and class members, whose pecuniary interest is in the award to the class.

Id. at 6 (quoting Pearson v. NBTY, Inc., 772 F.3d 778, 787 (7th Cir. 2014)). The class action

structure gives class counsel "an incentive to negotiate settlements that enrich themselves but give scant reward to the class members. Lewis, <u>Class Action Lawsuits: A Legal Overview for the 115th Congress</u>, 7.

The report noted that some of the provisions of FICALA seek to resolve

> a mismatch between the incentives possessed by class counsel and class representatives, particularly with respect to settlements. Once the class is certified, class counsel and defendants could be united in the desire to obtain a quick settlement that resolves all of the claims and pays class counsel. The defendant wants finality and class counsel wants its fees; neither the defendant nor class counsel particularly has an incentive to care if absent class members, at the end of the day, receive any benefit from the funds that are being distributed on their behalf. Unlike in a traditional lawsuit where the client is an active participant, class members are usually absent and unavailable to check class counsel for the same reason that class actions are needed—class members often have a negligible individual stake in the recovery.

<u>Id.</u> at 39.

The concern here is whether the class representative and class counsel are representing the interests of the class or are settling this action to the detriment of the unnamed class members and not to the Plaintiff.

Ultimately, while the Ninth Circuit has declared that a strong judicial policy favors settlement of class actions, <u>City of Seattle</u>, 955 F.2d at 1276, here, the Court questions whether this action is appropriate to be adjudicated as a class action. Although 15 U.S.C. § 1692k(a)(2)(B)(ii) limits the damages for a class action, each individual class member could bring a claim seeking $1,000.00. Given the limitations in damages due to the statutory scheme and the miniscule recovery that any unnamed class member will be receiving due to this settlement agreement, the Court questions whether litigating this matter as a class action can provide a settlement that is fair, reasonable, and adequate for the unnamed class members.

While the Court denies this settlement without prejudice, the Court will make itself available should the parties wish to discuss a potential settlement informally with the Court prior to filing a subsequent motion for preliminary approval. The parties may contact Courtroom Deputy Mamie Hernandez if they desire an informal teleconference regarding a proposed settlement.

## IV.

## CONCLUSION AND ORDER

Upon review of the proposed settlement agreement, the Court finds that it is not fair, adequate, and reasonable and therefore does not fall within the range of possible approval.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The parties' joint motion for preliminary approval of the class action settlement is DENIED without prejudice;

2. The parties shall notify the Court in writing within fourteen (14) days from the date of service of this order they will continue to pursue settlement or if a scheduling conference need be set; and

3. The hearing set for June 13, 2018 is VACATED and the parties need not appear at that time.

IT IS SO ORDERED.

Dated: **June 5, 2018**

UNITED STATES MAGISTRATE JUDGE